# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-00987-SCT

*PAULA LEE VAUGHN*

*v.*

*MISSISSIPPI BAPTIST MEDICAL CENTER*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/28/2008 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BILL WALLER, SR. |
| ATTORNEYS FOR APPELLEE: | GAYE NELL LOTT CURRIE |
| | EUGENE RANDOLPH NAYLOR |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 10/29/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE CARLSON, P.J., LAMAR AND CHANDLER, JJ.

## CARLSON, PRESIDING JUSTICE, FOR THE COURT:

¶1. This appeal stems from the Hinds County Circuit Court's grant of summary judgment in favor of Mississippi Baptist Medical Center (Baptist), based on the circuit court's finding that the plaintiff, Paula Vaughn, failed to establish a *prime facie* case of medical negligence. The trial court found that Vaughn had failed to establish the necessary element of proximate cause based on its finding that Vaughn's designated expert, a nurse, was not qualified to testify as to whether the negligent acts of Baptist proximately caused Vaughn's injuries. Moreover, the trial court declined to grant Vaughn's Motion to Amend Rulings of the Court

to allow Vaughn more time to designate another expert. Aggrieved, Vaughn appeals to us. Finding no error, we affirm.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. On or about October 24, 2005, Paula Vaughn was admitted to Mississippi Baptist Medical Center (Baptist) in Jackson for double artery bypass surgery and the repair of two valves connected with her heart. Additionally, Vaughn had arteries removed from the upper insides of both thighs, which resulted in bilateral, open wounds. The various procedures left Vaughn unable to ambulate or use the bathroom without assistance from Baptist staff. Vaughn alleged that the staff's failure to assist her caused her involuntarily to defecate and urinate, thus contaminating her leg wounds, and resulting in infection. This is disputed by Baptist, which has maintained throughout the course of proceedings that Vaughn did not have a staph infection during this initial hospitalization. Vaughn further alleged that her nurses at Baptist were negligent in their treatment of her in that they failed to notify a physician of infection and failed to properly dress and care for her wounds.

¶3. Vaughn was discharged from Baptist and transferred to Montfort Jones Hospital in Kosciusko on November 2, 2005. Baptist maintains that at the time of Vaughn's admission to Montfort Jones, no infection was present in the wound sites; and the admitting staff at Montfort Jones noted that Vaughn's surgical wounds were dressed and intact. Vaughn was discharged from Montfort Jones at her request on November 4, 2005. Vaughn returned to Montfort Jones on November 6, 2005, exhibiting weakness, dehydration, acute renal failure, and surgical wound infection.

2

¶4. She was readmitted to Baptist the following day. During this second hospital stay, she received further treatment for her leg wounds. Vaughn alleged that the nursing staff again failed properly to change the dressings as ordered. On November 21, 2005, Vaughn was referred to Brandon Nursing and Rehabilitation Center, LLC. Vaughn alleged in her complaint that she continued to receive negligent care of her wounds while at the rehabilitation center. She remained at this facility until December 5, 2005, when she was readmitted to Baptist.

¶5. Vaughn received wound vac care for her leg wounds and two units of blood due to low blood count. This particular hospitalization was from December 5, 2005, through December 9, 2005, when she was referred to Mississippi Hospital for Restorative Care.

¶6. On October 9, 2006, Vaughn filed suit in the Circuit Court for the First Judicial District of Hinds County against Baptist, Brandon Nursing and Rehabilitation Center, LLC; and John and Jane Does 1-20. Vaughn's complaint alleged, *inter alia*, that Baptist, by and through its agents and employees, failed to use due or reasonable care in her examination, care, diagnosis, and/or treatment. Baptist filed its response on November 6, 2006. Brandon Nursing and Rehabilitation Center, LLC filed its own answer and Motion to Compel Arbitration, or Alternatively Motion to Dismiss. Brandon Nursing and Rehabilitation Center, LLC, later settled with Vaughn and was dismissed with prejudice by Agreed Order.

¶7. Vaughn subsequently amended her complaint against Baptist and John and Jane Does 1-20. An amended scheduling order was entered on September 19, 2007, requiring Vaughn to designate her experts on or before November 2007. Vaughn designated four experts:

3

Crystal Keller, R.N.; Dr. Victor Kessler; Dr. Bashrat Houssein; and Dr. Pierce D. Dotherow, II. The majority of the testimony regarding standard of care, breach of the standard of care, and proximate cause was to come from Nurse Keller. Dr. Victor Kessler, one of Vaughn's treating physicians at Baptist, was designated to testify that Vaughn had suffered gastrointestinal complications as a result of the antibiotics used to treat Vaughn's staph infection and other infections while a patient at Baptist. Drs. Houssein and Dotherow also treated Vaughn at Baptist ; both physicians were expected to testify regarding their diagnoses and treatment of Vaughn, but not to testify as to any negligent acts on the part of Baptist staff.

¶8.     The trial court's Order Granting Defendant's Motion for Summary Judgment, Opinion/ Order Granting Defendant's Motion to Strike, Order Denying Motion to Amend Rulings of the Court, and Final Judgment of Dismissal with Prejudice all were entered on May 29, 2008.  Vaughn, by and through counsel, filed a Notice of Appeal on June 10, 2008, appealing all four of the aforementioned orders.  Since Brandon Nursing and Rehabilitation Center, LLC, was dismissed with prejudice due to settlement, and since Vaughn never substituted any parties for John and Jane Does 1-20 pursuant to Mississippi Rule of Civil Procedure 9(h), all necessary parties are properly before this Court on appeal.

## DISCUSSION

¶9.     Vaughn raises the following assignments of error by the trial court for this Court's review:

4

1.      It was error for the lower court to grant summary judgment and determine that there was no genuine issue of material fact with regard to the proximate cause of Vaughn's infection, including that there was no infection in Vaughn's legs proximately resulting from any acts or omissions of Mississippi Baptist Medical Center.

2.      It was error for the lower court to grant summary judgment in its entirety as Keller was qualified to testify as to the nursing standard of care and breach thereof.

3.      It was error for the lower court to grant Mississippi Baptist Medical Center's motion to strike Crystal Keller, R.N. as an expert witness and determine that she was not qualified to offer expert medical testimony regarding medical diagnosis and causation on the subject case. The claim is for damages arising from negligent "nursing care" and witness Keller is well qualified to present the "nursing standard of care."

4.      It was error for the lower court to deny Vaughn's Motion to Amend Rulings of the Court.

¶10.    For the sake of brevity, the issues have been restated as follows: (1) whether the trial court erred in granting summary judgment based on Vaughn's failure to establish proximate cause; (2) whether the trial court erred in striking Nurse Keller as Vaughn's designated expert; and (3) whether the trial court erred in denying Vaughn's Motion to Amend Rulings.

I.      **WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BASED ON VAUGHN'S FAILURE TO ESTABLISH PROXIMATE CAUSE.**

¶11.    This Court employs a de novo standard of review when reviewing a trial court's grant of summary judgment. ***Duckworth v. Warren***, 10 So. 3d 433, 436 (Miss. 2009) (citing ***One South, Inc. v. Hollowell***, 963 So. 2d 1156, 1160 (Miss. 2007)). Summary judgment properly may be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

5

material fact and that the moving party is entitled to judgment as a matter of law." Miss. R. Civ. P. 56(c). *See also* **Johnson v. City of Cleveland**, 846 So. 2d 1031, 1034-35 (Miss. 2003). In considering a motion for summary judgment in this fashion, the trial court must view all evidence before it as properly submitted pursuant to Rule 56 in the light most favorable to the nonmoving party. **Duckworth**, 10 So. 3d at 436-37 (citing **One South**, 963 So. 2d at 1160).

### A. Whether Vaughn's experts were able to establish the necessary element of proximate cause.

¶12. The trial court, in its Order Granting Defendant's Motion for Summary Judgment, found that the evidence before the court showed Vaughn's infection did not proximately result from any acts or omissions of Baptist. Moreover, the trial court found that Vaughn had presented no proof from a medical expert, as required by law, that Baptist proximately caused any infection. As a result it granted summary judgment, and the trial court struck Vaughn's expert, Crystal Keller, R.N., finding that nurses could not properly offer expert testimony as to medical causation.

¶13. Baptist argues that the trial court was correct in this finding, inasmuch as Vaughn's designated expert was not qualified to diagnose an infection and, according to Vaughn's treating physician at Baptist, no infection was present in the leg wounds during her first hospitalization from October 24, 2005, through November 2, 2005. Baptist contends that, because Nurse Keller is not qualified to make a medical diagnosis, she is not qualified to render an opinion as to medical causation. According to Baptist, because no genuine issue

6

of material fact exists with regard to the requisite element of proximate cause, it was entitled to summary judgment as a matter of law.

¶14. Vaughn argues that as a nurse, Keller was trained to recognize the signs and symptoms of infection and that Keller never opined as to anything above and beyond a nurse's area of practice. Keller maintained that Vaughn had signs and symptoms of infection during her first hospitalization at Baptist and that a breach in the standard of nursing care caused Vaughn's staph infection. Alternatively, Vaughn contends that, even if there was no infection during the initial hospitalization, the negligent care Vaughn received during subsequent hospitalizations contributed to the progression of the infection.

¶15. Our law is clear as to what is required to make out a *prima facie* case of medical negligence. This Court recently stated:

> In order to establish a prima facie case of medical negligence, [a plaintiff] must prove that (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant's breach of duty was a proximate cause of the plaintiff's injury, and (4) the plaintiff was injured as a result.

*McDonald v. Memorial Hosp. at Gulfport*, 8 So. 3d 175, 180 (Miss. 2009) (quoting *Delta Reg'l Med. Ctr. v. Venton*, 964 So. 2d 500, 504 (Miss. 2007)). The general rule in Mississippi is that "medical negligence may be established only by expert medical testimony, with an exception for instances where a layman can observe and understand the negligence as a matter of common sense and practical experience." *Coleman v. Rice*, 706 So. 2d 696,

7

698 (Miss. 1997) (quoting *Erby v. N. Miss. Med. Ctr.*, 654 So. 2d 495, 500 (Miss. 1995)).

*See also Estate of Northrop v. Hutto*, 9 So. 3d 381, 384 (Miss. 2009).

¶16.    The experts Vaughn designated were Crystal Keller, R.N., Dr. Victor Kessler, Dr. Bashrat Houssein, and Dr. Pierce D. Dotherow, II.  Drs. Houssein and Dotherow were expected to testify regarding their assessment and treatment of Vaughn, but not to testify as to any acts of negligence on behalf of the Baptist staff.  Dr. Victor Kessler, one of Vaughn's treating physicians at Baptist, was expected to testify that Vaughn had suffered gastrointestinal complications as a result of the antibiotics used to treat Vaughn's staph infection and other infections while a patient at Baptist Hospital.  Thus, Nurse Keller was the only witness designated to testify as to standard of care, breach of standard of care, the causal nexus between the alleged negligent acts of the Baptist nursing staff, and the resulting staph infection incurred by Vaughn.

¶17.    As to the element of proximate cause, Nurse Keller's affidavit read as follows:

> The deviations in the Nursing Standard of Care by the nursing staff at Baptist Hospital led to the development of signs and symptoms of infection in her bilateral leg wounds during her October 24-November 2, 2005 admission to Baptist Hospital. In addition, the deviations in the Nursing Standard of Care by the nursing staff at Baptist Hospital resulted in the further development of and progression of infection in her bilateral leg wounds during the initial admission and subsequent admissions to Baptist Hospital.

¶18.    Both parties cite *Richardson v. Methodist Hospital of Hattiesburg, Inc*., 807 So. 2d 1244 (Miss. 2002), in support of their arguments.  In *Richardson*, the same expert witness, Crystal Keller, R.N., opined that Methodist Hospital staff's deviation from the requisite standard of nursing care led to the patient's pain and suffering and subsequent death.  *Id*. at

8

1245. Testimony by Keller that the deviation in the standard of nursing care was the proximate cause of the patient's death was found by this Court to be outside the realm of Nurse Keller's qualifications. *Id.* at 1248. The reasoning behind this holding was that the cause of a stroke is a complex medical issue that was outside the scope of the education and experience of Nurse Keller; therefore, she lacked the qualifications to establish a causal nexus between the deviations in nursing care and cause of death. *Id.* at 1248. However, this Court found that Keller could offer an expert opinion as to whether the negligent acts on behalf of the nursing staff proximately caused the plaintiff's pain and suffering. *Id.* at 1247-48.[1]

¶19. Baptist cites *Richardson* in support of its premise that a nurse is not qualified to testify as to whether the deviation in the standard of nursing care caused Vaughn's staph infection, nor is Keller qualified to diagnose a staph infection. Baptist points to Nurse Keller's opinion that Vaughn was suffering from infection of her surgical leg wounds during Vaughn's initial hospitalization from October 24, 2005, until November 2, 2005 – a diagnosis that contradicted the opinions of Vaughn's treating physician, Dr. McMullan, and Baptist's infectious disease expert, Dr. Rathel L. Nolan, III.

---

[1] The dissent cites *Richardson* as authority that Keller at least should be allowed to testify as to Vaughn's "pain and suffering, depression, mental anguish, emotional distress, and loss of dignity." Dis. Op. ¶ 45. However, in today's case, nowhere in Keller's affidavit does she state, or even infer, that she would attempt to offer testimony concerning Vaughn's "pain and suffering, depression, mental anguish, emotional distress, and loss of dignity." Likewise, on appeal, Vaughn makes no effort to assert that Keller would offer such testimony.

9

¶20.    There is no dispute between the parties that a staph infection developed in the surgical

wounds.  There is a dispute, however, as to when the infection developed, more specifically,

whether it developed during Vaughn's initial hospitalization.  While *Richardson* explicitly

held that a nurse cannot testify as to cause of death, we agree with Baptist that *Richardson*

should be interpreted as having made impermissible any testimony from a nursing expert on

diagnostic impressions, because nurses are not qualified to make medical diagnoses or attest

to the causes of illnesses. *Richardson*, 807 So. 2d at 1247-48.  We now explicitly hold that

nurses cannot testify as to medical causation.

¶21.    Since medical diagnosis is outside a nurse's scope of practice, logically it would

follow that a nurse should not be permitted to testify as to his/her diagnostic impressions or

as to the cause of a particular infectious disease or illness.  This is in keeping with the

majority rule that nursing experts cannot opine as to medical causation and are unable to

establish the necessary element of proximate cause. *See Richberger v. West Clinic, P.C.,*

152 S.W.3d 505, 511 (Tenn. Ct. App. 2004) ("registered nurse is prohibited from making a

medical diagnosis [pursuant to T.C.A. § 63-7-103(b),] and is therefore not competent to offer

opinions on medical causation in a medical malpractice action.");[2] *Elswick v. Nichols*,  144

F. Supp. 2d 758, 767 (E.D. Ky. 2001) (nursing expert cannot testify as to how plaintiff

---

[2]Mississippi Code Section 73-15-5(2) (Rev. 2008), is very similar to Tennessee Code
Section 63-7-103(b), on which the Tennessee Court of Appeals relied in *Richberger*.
Tennessee Code Section 63-7-103(b) states in pertinent part that "the practice of professional
nursing does not include act of medical diagnosis. . ." Mississippi Code Section 73-15-5(2)
(Rev. 2008) states in pertinent part that the "practice of nursing . . . shall not be deemed to
include acts of medical diagnosis. . . ."

received infection because it was "outside [her] area of expertise"); *Colwell v. Holy Family Hosp.*, 15 P.3d 210, 213-14 (Wash. Ct. App. 2001) (holding that while nursing expert "possesse[d] the education and skill to testify to the standard of care of the decedent's treating nurses, a medical doctor must still generally connect [decedent's] death to the alleged nursing deficiencies. Accordingly, the trial court did not abuse its discretion in finding [a nurse] incompetent to testify to medical causation."); *Long v. Methodist Hosp. of Indiana, Inc.*, 699 N.E.2d 1164, 1169 (Ind. Ct. App. 1998) ("[W]e now hold that nurses are not qualified to offer expert testimony as to the medical cause of injuries."); *Phillips v. Alamed Co., Inc.*, 588 So. 2d 463, 465 (Ala. 1991) ("[W]e cannot say that the trial judge abused his discretion by requiring the testimony of a physician and, implicitly, holding that a registered nurse was not competent to testify as an expert on the issue of proximate cause.").

¶22.    Vaughn cites *Sacks v. Necaise*, 991 So. 2d 615 (Miss. Ct. App. 2007)[3] for the premise that, under current Mississippi law, nurses can offer opinions on proximate cause. The decedent in *Sacks* was being treated for lung cancer with a highly toxic drug named Taxol. *Id.* at 618. The treatment was administered via intravenous therapy by a nurse. The second treatment resulted in pain, swelling, and discoloration to the arm that was being infused – the

---

[3]This Court first considered this case on the plaintiff's appeal of the trial court's dismissal of the lawsuit, and we reversed the trial court's judgment of dismissal and remanded this case to the trial court for further proceedings. *Necaise v. Sacks*, 841 So. 2d 1098, 1107 (Miss. 2003). On remand, the trial court entered judgment for the plaintiff and the defendants appealed, which resulted in the 2007 decision of the Court of Appeals. This Court granted a petition for writ of certiorari on July 17, 2008. On the Court's own motion, the petition was found to be improvidently granted and was summarily dismissed. *See Sacks v. Necaise*, 987 So. 2d 451 (Miss. 2008).

subsequent damage to the arm was a third-degree chemical burn. *Id.* at 623. The plaintiff's theory was that the nursing staff had breached the standard of care by continuing to administer the drug over the course of three hours, despite having been alerted to the adverse reaction, i.e., swelling. *Id.* at 620. The defense's theory of the case was that the damage to the patient's arm was a result of a hypersensitivity to the drug, not negligent care. *Id*. at 621. The trial court allowed the nursing expert to dispute the theory of the defense expert, a physician, by testifying that the medical literature stated that tissue damage can be caused by the leaking of Taxol from the vein into the surrounding tissue, and that patients should be monitored continuously during administration. *Id.* at 623. The Court of Appeals rejected the defendants' argument on appeal that this testimony was outside the scope of nursing practice. *Id.*

¶23.     *Sacks* is easily distinguished from our case today inasmuch as the nursing expert in *Sacks* offered testimony on the validity of the defense's hypersensitive-reaction theory – an opinion based on the witness's review of the prevailing medical literature, not on the expert's own diagnostic impression. *Id.* at 623.  Moreover, the Court of Appeals noted in *Sacks* that the expert nurse was not designated to testify as to the causation of the plaintiff's injury, but she was called to testify as to whether the intravenous administration of the drug was done correctly. *Id.* at 622. The plaintiff's attorney, in a motion hearing, made clear that any theory of causation would be left to the testimony of Dr. Sacks – not the expert nurse.  *Id.* Therefore, we do not find the substance of the testimony by Nurse Keller in today's case to

12

be analogous to that of the nursing expert in ***Sacks***, and we do not find that the ***Sacks*** holding can be read to allow nurses to testify as to medical causation.

¶24. Accordingly, because Vaughn failed to establish the requisite element of proximate cause, Baptist was entitled to summary judgment as a matter of law.

### B. Whether Vaughn's children should have been allowed to offer lay testimony as to proximate cause.

¶25. Vaughn argues that her adult children, who attended her bedside during her hospitalizations, can attest to the fact that the nurses deviated from the standard of nursing care during the course of Vaughn's treatment at Baptist. Vaughn argues that the signs and symptoms of infection exhibited from October 24, 2005, to November 2, 2005, are a matter of common sense and practical experience, such that her children should be allowed to testify under the layman's exception. Vaughn cites testimony by her children regarding the marked changes in the appearance of her wounds, as well as the contamination of the wounds from urine and feces. Vaughn's children offered further testimony as to the deviation in the nursing standard of care, including failure to properly dress and clean wounds and failure to keep Vaughn's room in sanitary condition.

¶26. As previously stated, a medical expert is not necessary in instances in which a layman can observe and understand the negligence as a matter of common sense and practical experience. ***Gatlin v. Methodist Med. Ctr.***, 772 So. 2d 1023, 1026 (Miss. 2000) (citing ***Coleman v. Rice***, 706 So. 2d 696, 698 (Miss. 1997)). This Court has applied the layman's exception in cases involving foreign objects left inside patients or where patients were given

13

the wrong medication. *Smith v. Gilmore Mem'l Hosp., Inc.*, 952 So. 2d 177, 181 (Miss. 2007) (citing *Dailey v. Methodist Med. Ctr.*, 790 So. 2d 903 (Miss. 2001); *Coleman v. Rice*, 706 So. 2d 696, 698 (Miss. 1997)). However, diagnosing symptoms has been explicitly held by this Court to be outside of the realm of a lay person and an activity that requires a medical expert. *Id.*

¶27. Accordingly, Vaughn's argument that lay-witness testimony can establish the element of proximate cause is without merit. A lay witness cannot render an opinion as to whether the symptoms exhibited by Vaughn were associated with infection.

## II.     WHETHER THE TRIAL COURT ERRED IN STRIKING VAUGHN'S EXPERT WITNESS, CRYSTAL KELLER, R.N.

¶28. Mississippi Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial judge assumes the critical role as a gatekeeper in assessing the value of the testimony. *Webb v. Braswell*, 930 So. 2d 387, 397 (Miss. 2006) (citing *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31 (Miss. 2003)). When reviewing the trial court's decision to admit or exclude evidence, we are bound by an abuse-of-discretion standard of review. *Id.* at 396-97 (citing *McLemore*, 863 So. 2d at 34). "Unless we can safely say that the trial court abused its judicial discretion in allowing or disallowing evidence so as to

14

prejudice a party in a civil case, or the accused in a criminal case, we will affirm the trial court's ruling." *Jones v. State*, 918 So. 2d 1220, 1223 (Miss. 2005) (citing *McGowen v. State*, 859 So. 2d 320, 328 (Miss. 2003)).

¶29. Mississippi has adopted the *Daubert* standard for the admission of expert testimony. *McLemore*, 863 So. 2d at 35 (Miss. 2003) (citing *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) (as modified in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)). Factors used in a *Daubert* analysis include "whether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique's operation; and whether the theory or technique enjoys general acceptance within a relevant scientific community." *McLemore*, 863 So. 2d at 37.

¶30. According to Nurse Keller's affidavit, her testimony was expected to be as follows regarding the required elements of standard care and breach of that standard of care:

> The nursing staff at Baptist Hospital deviated from the standard of care in their treatment and care of Paula Vaughn in the following manners: (1) failure to adequately assess and reassess; (2) failure to notify the physician of the change in patient's status; (3) failure to properly document the changes/progression of the wounds; (4) failure to recognize signs and symptoms of infection; (5) failure to follow physician's orders; (6) failure to change dressings as ordered; (7) failure to properly clean wounds; (8) failure to prevent contamination of wounds; (9) failure to provide adequate nursing care; (10) failure to provide adequate wound care; (11) failure to timely request wound care evaluation and consultations; (12) failure to follow facility's own policies and procedures; (13) failure to [adequately] document; (14) failure to follow the nursing process.

15

¶31.    Based on the record before this Court, it is clear that Nurse Keller possessed the requisite knowledge, skill, experience, training, and education to be qualified as an expert in the field of nursing and was qualified to testify concerning the standard of care and any deviations on the part of Baptist nursing staff from that standard of care. In ***Richardson v. Methodist Hospital of Hattiesburg, Inc***., 807 So. 2d 1244 (Miss. 2002), this Court stated: "The fact that Keller is not a physician does not bar her right to testify concerning the standard of care for the nursing staff, but more appropriately may affect the weight of her testimony, which is an issue for the trier of fact." ***Id.*** at 1248.

¶32.    Inasmuch as we have held that Keller could not testify as to medical causation, the trial court did not abuse its discretion in not allowing testimony from Keller that the negligent acts of Baptist nurses proximately caused Vaughn's staph infection.  While the trial court did err in barring Keller's testimony outright and striking the portion of the affidavit regarding the elements of standard of care and deviations from the nursing standard of care, this assignment of error is moot, given that we have held summary judgment in this case was properly granted.

### III.    WHETHER THE TRIAL COURT ERRED IN DENYING VAUGHN'S MOTION TO AMEND RULINGS OF THE COURT.

¶33.    Vaughn filed a Motion to Amend Rulings of the Court on April 22, 2008. In this motion, Vaughn made the alternative argument that, should the trial court strike Nurse Keller, it should grant Vaughn more time to offer a second expert. Vaughn argued that the

expense of an appeal and the interest of accommodating a fair and impartial trial supported her motion for more time to procure an expert who could opine as to proximate cause.

¶34. Baptist Hospital, in its response to Vaughn's motion, argued that Vaughn had not met the requirements of Mississippi Rule of Civil Procedure 56(f) in that Vaughn had failed to articulate justification for failure to designate a legally sufficient expert. Baptist points to the fact that its motion for summary judgment was filed after one-and-one-half years of discovery, including amended scheduling orders and extensions of time to designate expert witnesses; thus, according to Baptist, Vaughn had sufficient time to develop requisite expert testimony but failed to do so. Based on the grounds and arguments set forth in this response, the trial court ruled that Vaughn's motion was not well-taken and declined to grant Vaughn additional time to find another expert.

¶35. Mississippi Rule of Civil Procedure 56(f) states:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

The decision to grant additional time for discovery in lieu of summary judgment is within the sound discretion of the trial judge and will not be reversed by this Court unless the decision can be characterized as an abuse of discretion. *Miss. Ins. Guar. Ass'n v. MS Cas. Ins. Co.*, 947 So. 2d 865, 876 (Miss. 2006) (citing *Marx v. Truck Renting & Leasing Assocs.*, 520 So. 2d 1333, 1344 (Miss. 1987); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1193 (5th Cir. 1986)). This Court has stated that in order to reap the benefit of Rule 56(f):

17

[T]he party resisting summary judgment must present specific facts why he cannot oppose the motion and must specifically demonstrate "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *United States v. Little Al*, 712 F.2d 133, 135 (5th Cir. 1983), [citing *Securities & Exchange Commission v. Spence & Green Chemical Co.*, 612 F.2d 896, 901 (5th Cir. 1980)]. The party opposing the motion for summary judgment may not rely on vague assertions that discovery will produce needed, but unspecified, facts particularly where there was ample time and opportunity for discovery. *Securities & Exchange Commission v. Spence & Green Chemical Co.*, 612 F.2d 896, 901 (5th Cir. 1980).

*Marx v. Truck Renting and Leasing Ass'n Inc.*, 520 So. 2d 1333, 1344 (Miss. 1987).

¶36. Vaughn's request for more time under Mississippi Rule of Civil Procedure 56(f) contained only "vague assertions" that further discovery would enable her to survive summary judgment. We agree that a period of one-and-one-half years was more than ample time for Vaughn to obtain expert testimony in an effort to avoid a grant of summary judgment against her. Therefore, we cannot find that the trial court abused its discretion in denying Vaughn more time to procure an additional expert.

**CONCLUSION**

¶37. Vaughn did not designate an expert qualified to opine as to whether any negligent acts on behalf of the Baptist nursing staff proximately caused Vaughn's injuries. Therefore, because Vaughn failed to establish a *prime facie* case of negligence, summary judgment was properly granted to Baptist as a matter of law. Moreover, while Vaughn's expert nurse was qualified to opine on the proper standard of care for nurses and whether Baptist staff deviated from that proper standard of care, she was not qualified to testify as to diagnostic impressions or the cause of Vaughn's injuries, because nurses are not qualified to testify as to medical

18

causation. However, having found that summary judgment was properly granted, the trial court's error in striking Nurse Keller as an expert is not dispositive in this case. Finally, we find no abuse of discretion by the trial court in refusing to grant Vaughn more time to obtain an expert, given that Vaughn's request under Mississippi Rule of Civil Procedure 56(f) came more than one-and-one-half years after discovery closed and contained only "vague assertions" that further discovery would result in enabling Vaughn to survive summary judgment.

¶38. For these reasons, the final judgment of dismissal entered by the Circuit Court for the First Judicial District of Hinds County in favor of Mississippi Baptist Medical Center and against Paula Lee Vaughn is affirmed.

¶39. **AFFIRMED.**

**DICKINSON, RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J. WALLER, C.J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶40. I respectfully disagree with the majority's holding that, without exception, "nurses cannot testify as to medical causation." Maj. Op. at ¶ 20. It likely is true that some nurses may not possess the requisite expertise to recognize the cause-and-effect relationship between conditions in a patient's environment, or particular kinds of harm that a patient may have experienced, and resulting diseases or maladies that occur in consequence of those conditions or events. However, the issue of whether a particular nurse, by virtue of his or her

19

knowledge, skill, experience, training or education, possesses such ability is better determined by a case-by-case inquiry than by a broad, "one-size-fits-all" judicial pontification to the effect that no nurse in the world will ever be allowed to testify as to medical causation in any Mississippi court case. As is true of any other profession, the education, experience and understanding of nurses span a broad spectrum. We should not enunciate a hard and fast rule that permanently forecloses the possibility of any nurse's being qualified to give expert testimony on medical causation in any and all cases that may arise in the future.

¶41. In this case, the plaintiff's pre-existing conditions, combined with multiple visits to several medical facilities, make it difficult to identify the proximate cause of Ms. Vaughn's staph infection. Therefore, I agree with the majority that, under the facts of this case, the trial court did not abuse its discretion in determining that Nurse Keller was not in a position to opine that the staph infection was proximately caused by the deficient care of Baptist's nursing staff.

¶42. However, although Nurse Keller could not testify that the staph infection was proximately caused by the treatment the plaintiff received during her first hospitalization at Baptist, she nonetheless is qualified to testify as an expert that, in her opinion, the nursing care given Ms. Vaughn during her first stay at Baptist breached the standard of care of nursing. The majority acknowledges such in stating,

> . . . it is clear that Nurse Keller possessed the requisite knowledge, skill, experience, training, and education to be qualified as an expert in the field of

20

nursing and was qualified to testify concerning the standard of care and any deviations on the part of Baptist nursing staff from that standard of care.

Maj. Op. at ¶ 31. Nevertheless, the majority prevents Nurse Keller's testifying that the care provided the plaintiff fell below the standard of care of nursing, a ruling that is contrary to this Court's decision in *Richardson v. Methodist Hospital of Hattiesburg, Inc.*, 807 So. 2d 1244, 1245 (Miss. 2002).

¶43.    In *Richardson*, the daughter of the decedent filed a personal-injury and wrongful-death action against Methodist Hospital of Hattiesburg, alleging that the defendant hospital "caused or contributed to her mother's pain, suffering, and death by providing sub-standard nursing." *Id.*  The plaintiff engaged Crystal D. Keller, the same expert under consideration here, who testified "that the deviations from the requisite standard of nursing care led to [the decedent's] suffering and subsequent death." *Id.*  On appeal, this Court held that, although Nurse Keller was not qualified to testify to highly complex medical processes, she was indeed qualified to testify as an expert in the field of nursing. *Id*, at 1247-48.  Specifically, the Court stated:

> We find the trial court's ruling was overly restrictive in not allowing Keller to testify concerning the appropriate standard of nursing care and the deviations from that standard.  *There is sufficient proffered evidence from Keller for a jury to consider whether the inadequate nursing care resulted in worsening [the plaintiff's] pain and suffering.*

*Id.* at 1246 (emphasis added).  The Court noted that because "there [was] a genuine issue of fact concerning whether [the decedent] suffered more physically and incurred more expense

21

from the failures of the nursing staff . . . the circuit court *improperly* granted summary judgment as to pain and suffering." *Id.* at 1247 (emphasis added). The same can be said here.

¶44.    Ms. Vaughn has presented ample proof to create a genuine issue of fact as to whether her suffering and financial costs were exacerbated by deficient nursing care at Baptist, including whether leaving Ms. Vaughn to soak in her own urine and feces for lengthy periods of time caused her pain and suffering, and whether Baptist's failure to monitor, clean, and dress Ms. Vaughn's surgical wounds contributed to her pain and suffering. Of course, the determination of whether the alleged breach of the nursing standard of care, as opined by Nurse Keller, proximately caused the pain and suffering, depression, mental anguish, emotional distress, and loss of dignity remains solely in the discretion of the jury.

¶45.    Because Nurse Keller was qualified to opine as an expert that the treatment received by Ms. Vaughn constituted a breach of the applicable standard of care, and because Ms. Vaughn presented genuine issues of material fact as to whether such breach, if any, caused her pain and suffering, depression, mental anguish, emotional distress, and loss of dignity, the trial court erred in striking all of Nurse Keller's testimony and granting summary judgment for those causes of action. Therefore, I would reverse the trial court's granting of summary judgment on those claims and would remand for a trial on the merits.

**GRAVES, P.J., JOINS THIS OPINION.**